UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JESUS RODRIGUEZ RODRIGUEZ,

Petitioner,

v.

CALVIN JOHNSON[1],

Respondents.

Case No. 2:22-cv-00912-ART-DJA

ORDER

Petitioner Jesus Rodriguez Rodriguez filed a counseled first amended petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 22. This matter is before the Court for adjudication of the merits of the first amended petition.[2] For the reasons discussed below, the Court denies the first amended petition, denies a certificate of appealability, and directs the Clerk of the Court to enter judgment accordingly.

## I. Background

### a. Factual Background

At the preliminary hearing, Rodriguez's step granddaughter, S.P., testified that Rodriguez sexually abused her between the ages of nine and ten. ECF No. 27-3 at 12-17. He sexually abused S.P. on two separate occasions. *Id.* at 19. On one occasion, Rodriguez entered S.P.'s bedroom and touched her vaginal area over her clothing while she was in bed. *Id.* at 15-16. On another occasion,

[1] According to the state corrections department's inmate locator page, Rodriguez is incarcerated at High Desert State Prison ("HDSP"). Jeremy Bean is the current warden of that facility. At the end of this order, the Court directs the Clerk to substitute Jeremy Bean as respondent for Respondent Calvin Johnson. *See* Fed. R. Civ. P. 25(d).

[2] Rodriguez filed an unopposed motion to extend time to file his reply (ECF No. 40), which the Court grants.

Rodriguez touched S.P.'s vaginal area over her clothing while she was on the couch. *Id.* at 20-21. S.P.'s mother walked into the room and saw Rodriguez's hand on S.P.'s vaginal area. *Id.* at 37-47.

Rodriguez's granddaughter, A.R., also testified at the preliminary hearing that Rodriguez sexually abused her when she was eight years old "a lot of times." *Id.* at 54-61. She testified that Rodriguez would come into her bedroom and penetrate her vagina with his penis. *Id.* at 62-63. Rodriguez would put his mouth on her vagina and made A.R. put her mouth on his penis. *Id.* at 63-65. The last time that A.R. saw Rodriguez, he touched A.R.'s buttocks with his fingers. *Id.* at 67-68. A.R's mother walked into the room during the last incident and Rodriguez was kicked out of their home. *Id.* at 68.

Rodriguez's eight-year-old granddaughter, N.R., testified at the preliminary hearing that Rodriguez sexually abused her. *Id.* at 80, 88, 92-95. Rodriguez made N.R. perform oral sex on him and he rubbed his penis on her clothed genital area. *Id.* at 92-95.

**b. Procedural Background**

The State charged Rodriguez with four counts of lewdness with a minor under the age of fourteen and five counts of sexual assault of a minor under fourteen years of age. ECF No. 27-8. At calendar call, Rodriguez entered a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970) to one count of attempt sexual assault with a minor under fourteen years of age. ECF No. 27-31. The state district court sentenced him to 84 to 210 months in prison with lifetime supervision. ECF No. 27-38. The Nevada Court of Appeals affirmed the judgment of conviction.

Rodriguez filed a state habeas petition. ECF No. 28-13. Following appointment of counsel and supplemental briefing, the state district court held an evidentiary hearing and denied his habeas petition. ECF Nos. 28-20, 28-24, 28-26. The Nevada Court of Appeals affirmed the denial of relief. ECF No. 28-39.

Rodriguez initiated this federal habeas corpus proceeding *pro se*. ECF No. 1. Following appointment of counsel, he filed his first amended petition. ECF Nos. 15, 22.

## II. Governing Standard for Review

### a. Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75.

The Supreme Court has instructed that "[a] state court's determination that

a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

**b. Standard for Ineffective Assistance of Counsel Claims**

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring Petitioner to demonstrate that: (1) the attorney's "representation fell below an objective standard of reasonableness[;]" and (2) the attorney's deficient performance prejudiced Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). Courts considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards

apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

## III. Discussion

### a. Ground 1—Validity of Guilty Plea

In Ground 1, Rodriguez alleges that his *Alford* plea was not knowing and voluntary because it was obtained as a result of ineffective assistance of counsel. ECF No. 22 at 6-8. He alleges that he made it clear until his change of plea hearing that he intended to go to trial. Rodriguez, however, had lost vision in one eye and was losing vision in his other eye while in pretrial detention in the Clark County Detention Center. Rodriguez informed the state district court of his medical concerns multiple times.

Rodriguez alleges that he entered his *Alford* guilty plea because his attorney told him he would finally be able to receive medical treatment for his eyes if he pleaded guilty and went into Nevada Department of Corrections ("NDOC") custody. He alleges that but for counsel's errors, he would not have accepted the plea negotiations and would have insisted on proceeding to trial.

#### i. Additional Background Information

At the plea canvass, Rodriguez affirmed that he read, understood, and signed the guilty plea agreement. ECF No. 27-30 at 4-5. He affirmed that he read and understood the charges against him in the amended information. *Id.* at 3-4. He affirmed that he believed the plea was in his best interest, that no one forced him to accept the plea, and that no one promised him anything in order for him to plead guilty. *Id.* at 8-9.

In the guilty plea memorandum, Rodriguez affirmed that he discussed the elements of the original charge against him with his attorney and that he

understands the nature of the charge against him. ECF No. 27-32 at 7. He affirmed that he discussed any possible defenses, defense strategies, and circumstances that may be in his favor with his attorney. *Id.* He further affirmed that "all of the foregoing elements, consequences, rights, and waiver of rights have been thoroughly explained to me by my attorney." *Id.* Attached to the guilty plea memorandum is a certificate of Rodriguez's counsel, in which counsel stated that he fully explained to Rodriguez the allegations contained in the charge to which the guilty plea is being entered. *Id.* at 8.

**ii. Standard for Valid Guilty Plea**

The federal constitutional guarantee of due process requires that a guilty plea be knowing, intelligent, and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). The relevant inquiry is whether a petitioner's guilty plea was voluntary and intelligent under the totality of the circumstances. *See Alford*, 400 U.S. at 31; *Brady*, 397 U.S. at 749.

If "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). The Supreme Court has held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58. The deficient-performance prong remains the same. *Id.* at 58–59. But the prejudice-prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. So "to satisfy the 'prejudice' requirement, the defendant must

show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

**iii. State Court Decision**

In affirming the denial of Rodriguez's state habeas petition, the Nevada Court of Appeal held:

> In his petition, Rodriguez claimed that counsel coerced him into pleading guilty by telling him he would not receive adequate health care for his deteriorating eyesight until he went to prison and he would not go to trial for six to seven years unless he pleaded guilty. The district court found that Rodriguez voluntarily entered into his plea agreement based on his guilty plea agreement and responses during the plea canvass. The district court found that Rodriguez affirmed that he was pleading guilty because the State could present sufficient evidence of his guilt and that he was not acting under duress or coercion or by virtue of any promises of leniency. The record supports the findings of the district court, and we conclude that Rodriguez failed to demonstrate that his plea was invalid. Thus, we conclude that the district court did not err by denying his claim without first conducting an evidentiary hearing.

ECF No. 28-39 at 7.

**iv. Analysis**

The Nevada Court of Appeals' ruling was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

Rodriguez's statements before the state district court during the guilty plea canvass and in the written plea agreement must be presumed truthful. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Kaczynski*, 239 F.3d 1108, 1114–15 (9th Cir. 2001) (in-court statements of defendant entering plea carry "substantial weight"). Rodriguez confirmed in open court that he was not being coerced or induced into entering a plea. The record does not contain evidence of coercion. There is no showing of any reasonable probability that, but for counsel's alleged errors, Rodriguez would not have pled guilty pursuant to *Alford*.

Rodriguez has not established that the state appellate court's adjudication of the claim in Ground 1 resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or in a decision that was based on an unreasonable determination of the facts. Ground 1 is denied.

**b. Ground 2—Ineffective Assistance re: Failure to Communicate**

In Ground 2, Rodriguez alleges that trial counsel rendered ineffective assistance for failure to communicate with Rodriguez about key case facts. ECF No. 22 at 9-11. Rodriguez alleges that his counsel largely ignored him despite Rodriguez's requests for updates about the status of his case. Rodriguez's counsel, Kevin Speed ("Speed"), did not provide discovery to Rodriguez because Speed didn't "see any benefit to providing [his] Spanish speaking client with a six grade education these documents." *Id.* at 10. He alleges that his subsequent counsel, Daniel Page ("Page") only provided him with limited discovery.

**i. State Court Determination**

The Nevada Court of Appeals held:

> Rodriguez claimed that counsel was ineffective for failing to communicate and for failing to provide him with discovery. Rodriguez claimed that counsel failed to return his phone calls or acknowledge requests he made. He also alleged that counsel did not inform him when hearings were moved. Further, he claimed that counsel failed to provide him with a copy of the victims' medical examinations which would have corroborated his claim that the victims were lying to receive an immigration benefit.
>
> Rodriguez failed to specifically allege how the lack of communication with counsel affected his decision to plead guilty. Further, he failed to demonstrate that his decision to plead guilty was affected by his not receiving the victim's medical examination report. As referenced above, Rodriguez had an opportunity to present the medical examinations and show that they would have made a difference to his decision to plead guilty. However, Rodriguez did not provide the medical examinations at the evidentiary hearing nor does he include them on appeal. Therefore, we conclude that Rodriguez failed to demonstrate a reasonable probability he would have insisted on going to trial had counsel communicated more or provided the medical examinations. Thus, we conclude that the district court did not err by denying this claim without holding an evidentiary hearing.

ECF No. 28-39 at 5.

**ii. Analysis**

The Nevada Court of Appeals' ruling was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

The Nevada appellate court's determination that Rodriguez failed to demonstrate prejudice was not an unreasonable application of *Strickland*. To obtain relief on this type of claim, "[P]etitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). If Rodriguez had chosen to go to trial, he would have faced being convicted of four counts of lewdness with a minor under the age of fourteen and five counts of sexual assault of a minor under fourteen years of age. Instead, Rodriguez was able to significantly limit his exposure to time in prison by pleading guilty pursuant to *Alford* to one count of sexual assault of a minor under fourteen years of age. As noted by the Nevada Court of Appeals, Rodriguez failed to demonstrate that his decision to plead guilty was affected by his counsel's failure to communicate and not receiving discovery documents. Rodriguez fails to demonstrate a reasonable probability that but for counsel's failure to communicate more and provide additional documents, a rational defendant in Rodriguez's situation would have pled not guilty and would have insisted on going to trial. Ground 2 is denied.

**c. Ground 3—Ineffective Assistance re: Failure to Investigate**

In Ground 3, Rodriguez alleges that counsel rendered ineffective assistance for advising him to plead guilty without investigating viable defenses. ECF No. 22 at 11-14. He alleges that the allegations against him were motivated by his ex-wife's desire to get revenge against him, and as an attempt to secure lawful immigration status through a U visa, which is available to victims of qualifying crimes and their relatives in limited circumstances. He asserts that his counsel's

investigation of such defense was inadequate. Counsel's investigation included asking an immigration attorney friend to search for a case related to the two minor children based on their names and birthdates and was told there were no open cases. Counsel also asked the prosecution if they were aware of the victims seeking any immigration benefits as a result of the case.

**i. State Court Determination**

The Nevada Court of Appeals held:

> Rodriguez claimed that counsel was ineffective because he should have investigated a defense that the victims, Rodriguez's ex-wife, and Rodriguez's son's girlfriend falsified the allegations against him in order to receive immigration benefits. He also claimed that the medical examinations of the victims would support his allegation regarding immigration benefits.
>
> The district court held an evidentiary hearing on this claim. The district court found that Rodriguez failed to demonstrate what further investigation into the alleged immigration benefits would have yielded. This finding is supported by the record. Counsel testified that he and his investigator looked into whether the victims, Rodriguez's ex-wife, and Rodriguez's son's girlfriend received any immigration benefits. Further, counsel asked the State if these people had received a benefit. Counsel and the State could not find evidence of any immigration benefit. Rodriguez failed to demonstrate what evidence counsel could have found had counsel done further investigation. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004) (stating a petitioner alleging that an attorney should have conducted a better investigation must demonstrate what the results of a better investigation would have been). He also failed to demonstrate how the victim's medical examinations would have supported his claim that immigration benefits were received. And Rodriguez did not provide this court with a copy of the medical examinations. See Cuzze, 123 Nev. at 603, 172 P.3d at 135; see also NRAP 30(b); Greene, 96 Nev. at 558, 612 P .2d at 688. Therefore, we conclude that Rodriguez failed to demonstrate counsel's performance was deficient or a reasonable probability he would not have pleaded guilty had counsel done further investigation. Thus, we conclude the district court did not err by denying this claim.

ECF No. 28-39 at 4-5.

**ii. Analysis**

The Nevada Court of Appeals' ruling was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

The Nevada appellate court's determination that Rodriguez failed to demonstrate deficient performance or resulting prejudice was not an unreasonable application of *Strickland*. As noted by the Nevada Court of Appeals, trial counsel made strategic decisions regarding investigation of any immigration benefit as a defense. *Strickland,* 466 U.S. at 690 ("Strategic choices made after thorough investigation of the law and facts are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.") Even if Rodriguez could show that counsel's advice was deficient, he failed to demonstrate that, but for counsel's alleged deficient conduct, he would not have pled guilty and would have insisted on going to trial.

Rodriguez failed to demonstrate that the immigration theory of defense would have succeeded at trial. *See Hill*, 474 U.S. at 59. "[I]neffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir.), *opinion amended on denial of reh'g*, 253 F.3d 1150 (9th Cir. 2001). There were multiple victims and witnesses. In light of the evidence against Rodriguez, the Nevada Court of Appeals reasonably determined that he failed to demonstrate prejudice. Ground 3 is denied.

**d. Ground 4—Ineffective Assistance re: Sentencing**

In Ground 4, Rodriguez alleges that counsel rendered ineffective assistance when counsel gave him incorrect advice regarding his plea agreement. ECF No. 22 at 14-15. He asserts that Page advised him that Rodriguez would not receive a sentence of more than three months to one year as a result of the plea agreement. The state district court, however, sentenced him to 84 to 210 months. He alleges that if he had known he was facing substantially more time than he was advised by counsel, he would not have pleaded guilty and would have proceeded to trial.

**i. State Court Determination**

The Nevada Court of Appeals held:

> Rodriguez claimed counsel was ineffective for promising him that, if he pleaded guilty, he would only receive a sentence of three months to one year in prison. The district court found that Rodriguez acknowledged in the guilty plea agreement that he was not "promised or guaranteed any particular sentence by anyone [and he was] signing this agreement voluntarily, after consultation with [his] attorney, and [he was] not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in this agreement." Further, the district court found that, at the change of plea hearing, Rodriguez was asked whether anyone forced him to plead or promised him anything in order to get him to plead guilty. He answered in the negative. The record supports the findings of the district court. Further, Rodriguez acknowledged in the guilty plea agreement and at the plea colloquy that the sentencing range was two years to 20 years in prison, well above the alleged promised sentence. As a result, we conclude that Rodriguez failed to demonstrate a reasonable probability he would have insisted on going to trial had counsel not made this alleged promise. Thus, we conclude that the district court did not err by denying this claim without first conducting an evidentiary hearing.

ECF No. 28-39 at 5-6.

**ii. Analysis**

The Nevada Court of Appeals' ruling was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

The plea canvass reflects that Rodriguez informed the state district court that he understood the plea agreement and entered into it freely and voluntarily. The plain terms of the plea agreement state that "the [state district court] must sentence me to imprisonment in the Nevada Department of Corrections for a minimum term of not less than two (2) years and a maximum term of not more than twenty (20) years." ECF No. 27-32 at 3. In addition, at the plea canvass, the state district court specifically confirmed that Rodriguez understood that he's "facing a minimum of two years to a maximum of 20 years in Nevada's department of prisons…" ECF No. 27-30 at 7. The Nevada appellate court's determination that Rodriguez failed to demonstrate prejudice was not an

unreasonable application of *Strickland* given the evidence in the record that Rodriguez was aware of the proper range of punishment when he entered his guilty plea. Ground 4 is denied.

## IV. Certificate of Appealability

This is a final order adverse to Rodriguez. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

## V. Conclusion

It is therefore ordered that Petitioner Jesus Rodriguez Rodriguez's First Amended Petition for Writ of Habeas Corpus (ECF No. 22) is denied.

It is further ordered that a certificate of appealability is denied.

It is further ordered that Petitioner's fourth unopposed Motion for Extension of Time (ECF No. 40) is granted.

It is further ordered that the Clerk of the Court is directed to substitute Jeremy Bean for Respondent Calvin Johnson, enter judgment accordingly, and

close this case.

DATED THIS 5th day of November, 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE